1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN BEJARANO,                          No.  2:14-cv-0075 CKD P (TEMP)

12              Plaintiff,

13        v.                                 ORDER AND

14   R. GOWER, et al.,                        FINDINGS AND RECOMMENDATIONS

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding pro se with a civil rights action.  This matter is

18   before the court on a motion for summary judgment brought pursuant to Rule 56 of the Federal

19   Rules of Civil Procedure on behalf of defendants Castillo, Harrison, Marquez, Marsh, and Walsh.

20   Plaintiff has filed an opposition to the motion.  Defendants have filed a reply.

21        For the reasons discussed below, the undersigned will recommend that defendants' motion

22   for summary judgment on the merits of plaintiff's due process claims be granted.

23                          **BACKGROUND**

24        Plaintiff is proceeding on his original complaint against defendants Castillo, Harrison,

25   Marquez, Marsh, and Walsh.  Therein, plaintiff alleges that defendants validated him as a gang

26   member primarily based on his possession of an old address book that incidentally contained

27   three names of validated gang members.  Plaintiff claims that there was insufficient evidence to

28   validate him as a gang member and that defendants failed to fully disclose the supporting facts

1    and evidence upon which they were relying thereby preventing him from presenting a proper

2    defense to the charge.  (Compl. at 3 & Ex. A.)  At screening, then-Magistrate Dale A. Drozd

3    found that plaintiff's complaint appeared to state a cognizable claim for relief against defendants

4    based on their involvement in his gang validation.  (Doc. No. 5)

5                     **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

6            Summary judgment is appropriate when the moving party "shows that there is no genuine

7    dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

8    Civ. P. 56(a).

9            Under summary judgment practice, the moving party "initially bears the burden of

10   proving the absence of a genuine issue of material fact."  In re Oracle Corp. Securities Litigation,

11   627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

12   The moving party may accomplish this by "citing to particular parts of materials in the record,

13   including depositions, documents, electronically store information, affidavits or declarations,

14   stipulations (including those made for purposes of the motion only), admission, interrogatory

15   answers, or other materials" or by showing that such materials "do not establish the absence or

16   presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to

17   support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).

18           When the non-moving party bears the burden of proof at trial, "the moving party need

19   only prove that there is an absence of evidence to support the nonmoving party's case."  Oracle

20   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.).  See also Fed. R. Civ. P. 56(c)(1)(B).

21   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

22   against a party who fails to make a showing sufficient to establish the existence of an element

23   essential to that party's case, and on which that party will bear the burden of proof at trial.  See

24   Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the

25   nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a

26   circumstance, summary judgment should be granted, "so long as whatever is before the district

27   court demonstrates that the standard for entry of summary judgment, . . ., is satisfied."  Id. at 323.

28   /////

2

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing

2    party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

3    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the

4    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

5    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

6    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

7    Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the

8    fact in contention is material, i.e., a fact that might affect the outcome of the suit under the

9    governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,

10   Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is

11   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

12   party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

13   In the endeavor to establish the existence of a factual dispute, the opposing party need not

14   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

15   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

16   trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

17   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

18   Matsushita, 475 U.S. at 587 (citations omitted).

19   "In evaluating the evidence to determine whether there is a genuine issue of fact," the

20   court draws "all reasonable inferences supported by the evidence in favor of the non-moving

21   party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is

22   the opposing party's obligation to produce a factual predicate from which the inference may be

23   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

24   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

25   party "must do more than simply show that there is some metaphysical doubt as to the material

26   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

27   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation

28   omitted).

3

1                              **OTHER APPLICABLE LEGAL STANDARDS**

2    I. Civil Rights Act Pursuant to 42 U.S.C. § 1983

3          The Civil Rights Act under which this action was filed provides as follows:

4                 Every person who, under color of [state law] . . . subjects, or causes
                  to be subjected, any citizen of the United States . . . to the
5                 deprivation of any rights, privileges, or immunities secured by the
                  Constitution . . . shall be liable to the party injured in an action at
6                 law, suit in equity, or other proper proceeding for redress.

7    42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

8    actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

9    Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

10   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

11   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

12   omits to perform an act which he is legally required to do that causes the deprivation of which

13   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

14         Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

15   their employees under a theory of respondeat superior and, therefore, when a named defendant

16   holds a supervisorial position, the causal link between him and the claimed constitutional

17   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

18   Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations

19   concerning the involvement of official personnel in civil rights violations are not sufficient.  See

20   Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

21   II.  The Fourteenth Amendment and Due Process Protections for Prisoners

22         When placement in administrative segregation impairs an inmate's liberty interest, the

23   Due Process Clause requires prison officials to provide the inmate with "some notice of the

24   charges against him and an opportunity to present his views to the prison official charged with

25   deciding whether to transfer him to administrative segregation."  Bruce v. Ylst, 351 F.3d 1283,

26   1287 (9th Cir. 2003) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1099 (9th Cir. 1986),

27   overruled on other grounds by Sandin v. Connor, 515 U.S. 471 (1995)).

28   /////

                                                    4

In addition to the notice and opportunity for presentation requirements, due process requires prison officials to have an evidentiary basis for their decision to place an inmate in segregation for administrative reasons.  See Superintendent v. Hill, 472 U.S. 445, 455 (1985); Toussaint, 801 F.2d at 1104–05.  The evidentiary basis is satisfied if there is "some evidence" from which a court can deduce an administrative tribunal's conclusion.  Hill, 472 U.S. at 455; Toussaint, 801 F.2d at 1105.  The evidence relied upon must have "some indicia of reliability." See Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).  This "some evidence" test has been applied to an inmate's placement in the SHU for gang affiliation.  Castro v. Terhune, 712 F.3d 1304, 1307 (9th Cir. 2013) (citing Bruce, 351 F.3d at 1287).

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND EVIDENCE**

Defense counsel has submitted a statement of undisputed facts supported by declarations signed under penalty of perjury by defendants Harrison and Walsh.  That statement of undisputed facts is also supported by citations to plaintiff's complaint, plaintiff's deposition testimony, and copies of various forms used during plaintiff's gang validation, including general chronos, a "Gang Validation Evidence Disclosure and Interview Notification" form, and "Confidential Information Disclosure" forms.  The evidence submitted by the defendants in support of their pending motion for summary judgment establishes in relevant part the following.

1. At all relevant times, plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and incarcerated at California Correctional Center, Susanville ("CCC").  (Defs.' SUDF 1, Pl.'s Compl.)

2. At all relevant times, defendants Castillo, Marsh, and Walsh worked as Institutional Gang Investigators at CCC, and defendants Harrison and Marquez were Special Agents for the Office of Correctional Safety's Special Services Unit.  (Defs.' SUDF 2, Pl.'s Compl.)

3. On January 13, 2014, plaintiff filed a complaint in this action alleging that defendants violated his Fourteenth Amendment rights by wrongfully validating him as an associate of the Northern Structure prison gang with unreliable and insufficient evidence, and by not providing such evidence to him, which rendered him unable to defend against the validation.  (Defs.' SUDF 3, Pl.'s Compl.)

5

1      4.  A "gang" is defined as an "ongoing formal or informal organization, association or group of three or more persons which has a common name or identifying sign or symbol whose members and/or associates, individually or collectively, engage or have engaged, on behalf of that organization, association, or group, in two or more acts which include, planning, organizing, threatening, financing, soliciting, or committing unlawful acts of misconduct classified as serious pursuant to the California Code of Regulations, Title 15, § 3315.  (Defs.' SUDF 31, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3000))

5.  An "associate is an inmate/parolee or any person who is involved periodically or regularly with members of associates of a gang.  (Defs.' SUDF 32, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(4)))

6.  Identification of an "associate" requires at least three independent source items of documentation indicative of association with validated gang members or associates. (Defs.' SUDF 33, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(4)))

7.  Validation of an inmate/parolee or any person as an associate of a gang requires at least one source item be a "direct link" to a current or former validated member or associate of the gang, or to an inmate/parolee of any person who is validated by the department within six months of the established or estimated date of activity identified in the evidence considered.  (Defs.' SUDF 34, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(4)))

8.  Gang involvement shall be investigated by a gang coordinator/investigator, and a CDC Form 812-A or B "Notice of Critical Gang Information" shall be completed if an inmate has been verified as a currently active member or associate of a gang as defined in California Code of Regulations, Title 15, § 3000.  (Defs.' SUDF 35, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(1)))

9.  Current activity is defined as any documented gang activity within the past six years. (Defs.' SUDF 36, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(1)))

/////

/////

1    10. The Validation evidence shall be documented on a CDC Form 128-B2 "Gang

2        Validation/Rejection Review", and placed in the inmate's central file.  (Defs.' SUDF 37,

3        Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)(G)))

4    11. The determination of a gang identification shall reference each independent source item in

5        the inmate's central file.  (Defs.' SUDF 38, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15,

6        § 3378(c)(8)))

7    12. The criteria required for source items include, but are not limited to association,

8        informants, and debriefing reports.  (Defs.' SUDF 39, Deoring Decl. Ex. B (Cal. Code

9        Regs. tit. 15, § 3378(c)(8)(G), (H), (M)))

10    13. An "association" source item includes information related to the inmate's association with

11        validated gang affiliates, such as addresses, names, and identities.  Staff shall document

12        association information and disclose it to the inmate in a written form that would not

13        jeopardize the safety of any person or the security of the prison.  (Defs.' SUDF 40,

14        Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(8)(G)))

15    14. An "informant" source item includes documentation of information evidencing gang

16        affiliation from an informant.  (Defs.' SUDF 41, Deoring Decl. Ex. B (Cal. Code Regs. tit.

17        15, § 3378(c)(8)(H)))

18    15. This documentation shall include the date of the information, whether the information is

19        confidential, and an evaluation of the informant's reliability.  (Defs.' SUDF 42, Deoring

20        Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(8)(H)))

21    16. This information may be used as a source of validation if the informant provides specific

22        knowledge of how he knew the inmate to be involved with a gang.  Staff must document

23        and disclose this information to the inmate in a written form that would not jeopardize the

24        safety of any person or the security of the institution.  (Defs.' SUDF 43, Deoring Decl. Ex.

25        B (Cal. Code Regs. tit. 15, § 3378(c)(8)(H)))

26    17. A "debriefing report" source item is a report which includes specific gang related acts.

27        This information shall be documented by staff and provided to the inmate in a form that

28        would not jeopardize the safety of any person or the security of the institution.  This

information may be used as a source of validation if the informant provides specific knowledge of how he knew the inmate to be involved with a gang.  Staff must document and disclose this information to the inmate in a written form that would not jeopardize the safety of any person or the security of the institution.  (Defs.' SUDF 44, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(8)(H)))

18. Verification of an inmate's gang identification shall be validated or rejected by the Chief of the Office of Correctional Safety ("OCS") or a designee.  (Defs.' SUDF 45, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)))

19. Prior to submission of a validation package to OCS, the subject of the investigation shall be interviewed by the Institution Gang Investigator and given an opportunity to be heard in regards to the source items used in the validation.  (Defs.' SUDF 46, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)(A)))

20. The inmate shall be given written notice at least 24 hours before the interview.  (Defs.' SUDF 47, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)(A)))

21. All source items used in the validation shall be disclosed to the inmate, and all confidential information used shall be disclosed to the inmate in a CDC Form 1030 "Confidential Information Disclosure Form."  (Defs.' SUDF 48, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)(B)))

22. The interview shall be documented, a copy provided to plaintiff, and submitted to OCS for approval.  (Defs.' SUDF 49, Deoring Decl. Ex. B (Cal. Code Regs. tit. 15, § 3378(c)(6)(D), (E)))

23. On July 20, 2012, Plaintiff was provided two Confidential Information Disclosure Forms (CDC Form 1030) and a Gang Validation Evidence Disclosure and Interview Notification form (CDC Form 128-B), and moved to the Segregated Housing Unit.  These documents reflect that three source items had been identified and were used to validate plaintiff as an associate of the Northern Structure prison gang.  (Defs.' SUDF 50, Walsh Decl. Exs. B & C, Pl.'s Dep. at 40-40, 45)

/////

24. These source items included an address book found amongst plaintiff's personal property in his cell which contained the name of three validated Northern Structure gang members and associates, a confidential memorandum by an informant dated April 11, 2007, and a confidential debriefing report dated January 17, 2012.  (Defs.' SUDF 50, Walsh Decl. Exs. B & C)

25. On November 11, 2011, defendant Walsh searched plaintiff's cell and discovered the address book with the contact information for three validated Northern Structure Prison gang members and associates.  (Defs.' SUDF 52, Walsh Decl. Ex. A)

26. On July 21, 2012, plaintiff drafted a rebuttal to the gang validation package, explaining the issues of reliability with the source items used to validate him and gave the document to defendant Walsh.  (Defs.' SUDF 53, Pl.'s Dep. at 41-43)

27. On July 23, 2012, defendant Walsh interviewed plaintiff, and plaintiff had an opportunity to make his arguments for about fifteen to twenty minutes.  (Defs.' SUDF 54, Walsh Decl. Ex. D)

28. On August 3, 2012, OCS received plaintiff's gang validation package.  Defendants Harrison and Marquez reviewed the source items included in the gang validation package and determined that each of them met the validation requirements.  (Defs.' SUDF 55, Harrison Decl. Ex. A)

29. On October 10, 2012, defendant Walsh sent plaintiff a copy of the CDCR 128-B-2 "SSU Gang Validation/Rejection Review," reflecting that prison officials had validated him as an Associate of the Northern Structure prison gang.  (Defs.' SUDF 56, Walsh Decl. Ex. E)

**ANALYSIS**

The United States Supreme Court has held that the procedural protections guaranteed by the Fourteenth Amendment Due Process Clause apply when a constitutionally protected liberty or property interest is at stake.  See Wilkinson v. Austin, 545 U.S. 209, 221 (2005); see also Marsh v. County of San Diego, 680 F.3d 1148, 1155 (9th Cir. 2012) ("Once a state creates a liberty interest, it can't take it away without due process."); Brittain v. Hansen, 451 F.3d 982, 999-1000 (9th Cir. 2006) (those who seek to invoke procedural due process protections must establish that a

1  life, liberty, or property interest is at stake).  The Due Process Clause itself does not give

2  prisoners a liberty interest in avoiding transfer to more adverse conditions of confinement.  See

3  Meachum v. Fano, 427 U.S. 215, 225 (1976).  However, states may create liberty interests which

4  are protected by the Due Process Clause.  These circumstances generally involve a change in

5  condition of confinement that imposes an "atypical and significant hardship on the inmate in

6  relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

7        In their motion for summary judgment, defendants argue that plaintiff has not established

8  a liberty interest in avoiding confinement in the SHU, and therefore, he was not entitled to even

9  minimal procedural due process protections prior to his indeterminate SHU placement.  (Defs.'

10  Mem. of P. & A. at 13.)  Although temporary confinement in administrative segregation typically

11  does not implicate a protected liberty interest, imposition of an indeterminate SHU term as a

12  result of a gang validation constitutes a much greater deprivation.  The undersigned observes that

13  some courts have determined that indefinite placement in the SHU implicates a protected liberty

14  interest.  See, e.g., Madrid, 889 F. Supp. at 1271 ("defendants may not confine prison gang

15  members in the SHU, nor hold them there on indeterminate terms, without providing them the

16  quantum of procedural due process required by the Constitution."); Suarez v. Cate, No. 2:12-cv-

17  2048 KJM EFB, 2014 WL 996018 at *8 (E.D. Cal. Mar. 13, 2014) (plaintiff's placement in the

18  SHU for an indefinite term based on his gang affiliation implicated a protected liberty interest

19  such that defendants were constitutionally required to provide plaintiff with certain minimal

20  procedural due process protections); Castro v. Prouty, No. 1:09–CV01763 GBC PC, 2011 WL

21  529493 at *3 (E.D. Cal. Feb. 3, 2011) (citing Wilkinson, 545 U.S. at 223-25 and assuming that

22  confinement in the SHU for an indeterminate period implicates a protected liberty interest), aff'd,

23  478 Fed. App'x 449 (9th Cir. 2012).  However, this court need not decide whether plaintiff's

24  placement in the SHU based on his gang validation implicated a protected liberty interest

25  because, even assuming for the sake of argument that plaintiff has established that he had a

26  protected liberty interest, the undisputed facts and evidence before this court demonstrate that he

27  received any minimal procedural protections the Fourteenth Amendment Due Process Clause

28  requires.

As an initial matter, the undersigned finds that based on the evidence submitted on summary judgment and described above, the defendants have borne their initial burden of demonstrating that there is no genuine issue of material fact with respect to plaintiff's Fourteenth Amendment claim.  Specifically, evidence submitted by defendants in support of their motion for summary judgment demonstrates that they provided plaintiff with all of the procedural due process protections required.  See Toussaint, 801 F.2d at 1099 (prison officials must provide the inmate with "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.").  Defendants' evidence also demonstrates that plaintiff's gang validation was supported by "some evidence."  See Castro, 712 F.3d at 1307 ("Due process also requires such validations to be supported by 'some evidence.'"); Bruce, 351 F.3d at 1287 ("some evidence" standard applies to gang validations).

In light of the evidence submitted by the defendants in support of the pending motion for summary judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his claim.  The undersigned has reviewed plaintiff's complaint, his opposition to defendants' pending motion, and his deposition testimony.  On defendants' motion for summary judgment the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the undersigned finds that plaintiff has not come forward with evidence on summary judgment suggesting that the defendants violated his right to due process when they validated him as a member of the Northern Structure prison gang.

First, the undisputed facts and evidence in this case demonstrate that plaintiff received adequate notice of his gang association charge.  On July 20, 2012, the Institutional Gang Investigations Unit completed an investigation of plaintiff's current gang status, and defendant Walsh prepared and provided plaintiff with two Confidential Information Disclosure Forms (CDC Form 1030) and a Gang Validation Evidence Disclosure and Interview Notification Form (CDC Form 128-B).  (Walsh Decl. Exs. B-D & Pl.'s Depo. at 40-43.)  These forms reflected the three source items ultimately used to validate plaintiff as an associate of the Northern Structure prison

1    gang.  (<u>Id.</u>)  Defendant Walsh also advised plaintiff that an interview regarding the information

2    obtained during the investigation would be held in no less than 24 hours.  (Walsh Decl. Ex. D.)

3    Insofar as plaintiff was entitled to notice of the charges against him, the notice plaintiff received

4    on July 20, 2012, satisfied this due process clause requirement.  See <u>Toussaint</u>, 801 F.2d at 1100-

5    01 ("the due process clause does not require detailed written notice of the charges."); <u>see</u> <u>also</u>

6    <u>Manibusan v. Alameida</u>, No. C 04-2611 JSW (PR), 2006 WL 496041 at *5 (N.D. Cal. Feb. 28,

7    2006) (the undisputed evidence showed prisoner-plaintiff received sufficient notice because the

8    "pieces of information relied upon to validate Plaintiff as a gang member . . . were placed in his

9    file and were available to him for reviewing," along with copies of the chronos).

10            Second, the undisputed facts and evidence in this case demonstrate that plaintiff had an

11   opportunity to be heard.  On July 23, 2012, plaintiff was interviewed regarding the documents

12   utilized in his prison gang validation package.  (Walsh Decl. Ex. D.)  Plaintiff had prepared and

13   submitted a written rebuttal and reiterated the information provided in that rebuttal during his

14   interview.  (<u>Id.</u>)  After reviewing plaintiff's written response and after a thorough review of the

15   evidence, prison officials determined that plaintiff's claims had no merit and did not warrant

16   further investigation.  (<u>Id.</u>)  Insofar as plaintiff was entitled to an opportunity to be heard by

17   prison officials before they transferred him to the SHU, the interview prison officials conducted

18   with plaintiff on July 23, 2012, satisfied this due process clause requirement.  See <u>Hewitt v.</u>

19   <u>Helms</u>, 459 U.S. 460, 476 (1983) (ordinarily a written statement will accomplish the purpose of

20   presenting a prisoner's views); <u>see</u> <u>also</u> <u>Suarez v. Cate</u>, No. 2:12-cv-2048 KJM EFB P, 2014 WL

21   996018 at *10-*11 (E.D. Cal. Mar. 13, 2014) (defendants satisfied the due process requirement of

22   providing the prisoner with an opportunity to be heard by providing the plaintiff with an

23   opportunity to submit written objections to Assistant IGI for IGI), <u>adopted as modified on other</u>

24   <u>grounds by</u> 2014 WL 2745724 (E.D. Cal. June 17, 2014).

25            Finally, the undisputed facts and evidence in this case demonstrate that there was "some

26   evidence" with "some indicia of reliability" to support plaintiff's validation as a member of the

27   Northern Structure prison gang.  Specifically, the parties do not dispute that on November 4,

28   2011, defendant Walsh conducted a search of plaintiff's property in his cell and found an address

1    book that contained the contact information for three validated members and associates of the

2    Northern Structure prison gang (Leonard Duque, P-99868, Silverio Ontiveros, F-58721, and

3    David Quintanilla, P-05884).  This address book satisfies the minimally stringent "some

4    evidence" test.  Castro, 712 F.3d at 1314-15 (the "some evidence" review applicable here only

5    requires the court to ask "whether there is *any evidence* in the record that could support the

6    conclusion.").  Although plaintiff offers other explanations as to why he had the contact

7    information for these validated inmates, courts "do not examine the entire record, independently

8    assess witness credibility, or reweigh the evidence."  Bruce, 351 F.3d at 1287.  Moreover, even if

9    plaintiff's explanations for having other validated inmates' contact information are plausible,

10   "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but

11   the one reached."  Hill, 472 U.S. at 456.  See also Castro, 712 F.3d at 1314-15 (inmate's

12   possession of two pictures containing gang-related symbols constituted "some evidence" that the

13   inmate was involved with the gang in question, and the possibility that they could support

14   competing inferences does not affect that conclusion).

15          In fact, district courts throughout the Ninth Circuit have repeatedly held that an inmate's

16   possession of an address book containing validated inmates' contact information constitutes

17   "some evidence."  See Underwood v. Gonzalez, No. 1:11-cv-1710 LJO MJS (PC), 2015 WL

18   3869253 at *10 (E.D. Cal. June 22, 2015) (plaintiff's possession of other validated inmates'

19   names and CDCR numbers in his address book was "some evidence" of his gang association even

20   if his possession of the information could support competing inferences); Real v. Walker, No.

21   2:09-cv-3273 GEB KJN, 2015 WL 351525 at *12 (E.D. Cal. Jan. 26, 2015) (plaintiff's possession

22   of a gang mail drop address would justify his validation as a gang member under the "some

23   evidence" standard because due process does not require there be no alternative explanation for

24   evidence prison officials use in a gang validation); Goolsby v. Gentry, No. 1:11-cv-1773 LJO

25   DLB, 2014 WL 4930759 at *7-*8 (E.D. Cal. Sept. 29, 2014) (plaintiff's address book constituted

26   "some evidence" despite plaintiff's argument that he had legitimate reasons for having validated

27   inmates' information because defendants do not have to prove that plaintiff had their information

28   for gang-related purposes), adopted by 2014 WL 6306819 (E.D. Cal. Nov. 13, 2014); Dominguez

13

1   v. Rocha, No. 1:10-cv-0364 AWI BAM, 2013 WL 5347457 at *6 (E.D. Cal. Sept. 23, 2013)

2   (CDC 128-B chrono based on plaintiff's address book, which contained the names, prison

3   numbers, and addresses of validated gang members and associates constituted "some evidence"

4   and had some indicia of reliability because other sources corroborated the names in the address

5   book as validated gang members); Percelle v. S. Pearson., 2013 WL 3945022 at *3-*4 (N.D. Cal.

6   July 29, 2013) (plaintiff's possession of the addresses of some "known" BGF members and the

7   George Jackson book constituted "some evidence" that could support the conclusion that he was a

8   BGF gang member even though the evidence could also support the opposite conclusion).  Cf.

9   Conner v. Lewis, No. 11-cv-4464 WHO, 2014 WL 4348460 at *2 (N.D. Cal. Sept. 2, 2014) (in

10  habeas corpus action challenging gang validation, petitioner's address book containing address of

11  an individual who funneled gang communication between gang members satisfied the some

12  evidence requirement and the some indicia of reliability standard because it was not voluntarily

13  submitted by an inmate but seized by prison officials pursuant to investigation); Vasquez v.

14  Stainer, No. CV 09-3029 AHM SS, 2011 WL 3565056 at *5 (C.D. Cal. July 20, 2011) (in habeas

15  corpus action challenging gang validation, petitioner's address book containing contact

16  information for validated gang members was clearly indicative of gang membership if not

17  conclusive), adopted by, 2011 WL 3568224 (C.D. Cal. Aug. 11, 2011).  Plaintiff has not

18  submitted any evidence to the court to suggest that this case is distinguishable from the ones cited

19  herein.

20          Accordingly, for all of the foregoing reasons, the undersigned will recommend that

21  defendants' motion for summary judgment be granted as to plaintiff's Fourteenth Amendment

22  due process claims in connection with his gang validation.[1]

23                              **OTHER MATTERS**

24          Also pending before the court is plaintiff's motion to compel defendants to produce all of

25  the confidential documents used during his gang validation process.  Customarily, the court

26  ─────────────────────
    [1] In light of this recommendation, the undersigned declines to address defendants' alternative
27  arguments that they are entitled to summary judgment in their favor based on the affirmative
    defense of qualified immunity or because plaintiff failed to exhaust his administrative remedies
28  prior to filing suit as required.

1  would decide any discovery motions prior to issuing findings and recommendations on a

2  dispositive motion.  In this case, however, the parties had fully briefed the dispositive motion, and

3  based on the undisputed facts and evidence, the court has concluded that plaintiff received all of

4  the minimum procedural protections he would be entitled to and that his gang validation was

5  based on "some evidence."  The "some evidence" in this case was a non-confidential address

6  book that neither party disputes was plaintiff's property and contained validated inmates' contact

7  information.  In this regard, even if plaintiff were to prevail on his motion to compel, plaintiff's

8  due process claims nevertheless fail on the merits.  See Bruce, 351 F.3d 1289 (any of these three

9  pieces of evidence sufficed to support the validation"); see also Verwolf v. Hamlet, No. C03-807

10 TEH (PR), 2003 WL 22159055 at *2 (N.D. Cal. Sept. 17, 2003) ("Although CDC's regulations

11 may require that three pieces of evidence support a gang validation decision, due process requires

12 only that there be 'some evidence' in the record to support the findings of a prison board's

13 decision to place an inmate in segregation for administrative reasons such as gang affiliation.").

14 Accordingly, the court will deny plaintiff's motion to compel as having been rendered moot.

## CONCLUSION

16   Accordingly, IT IS HEREBY ORDERED that:

17   1.  Plaintiff's motion to compel (Doc. No. 19) is denied as having been rendered moot;

18 and

19   2.  The Clerk of the Court is directed to randomly assign a United States District Judge to

20 this action.

21   IT IS HEREBY RECOMMENDED that:

22   1.  Defendants' motion for summary judgment (Doc. No. 22) be granted; and

23   2.  This action be closed.

24   These findings and recommendations are submitted to the United States District Judge

25 assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

26 after being served with these findings and recommendations, any party may file written

27 objections with the court and serve a copy on all parties.  Such a document should be captioned

28 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

1    objections shall be filed and served within seven days after service of the objections.  The parties

2    are advised that failure to file objections within the specified time may waive the right to appeal

3    the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4    Dated:  December 23, 2015

5    _____

6    CAROLYN K. DELANEY
     UNITED STATES MAGISTRATE JUDGE

7

8    ec
     beja0075.57

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16